# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

## CIVIL RIGHTS COMPLAINT FORM FOR
## PRO SE (NON-PRISONER) LITIGANTS IN ACTIONS UNDER
## 28 U.S.C § 1331 and 42 U.S.C. § 1983

DUSTIN TRAVIS BEACH, individually, and

SHAWNA MARIE BEACH, individually,

Plaintiffs,

Case No.: 4:26-cv-243 AW MAF

v.

JACK CAMPBELL,

in his individual capacity,

as State Attorney for the

Second Judicial Circuit of Florida,

Defendant.

_____/

**Jury Trial Requested?**

☒ **YES**   ☐ **NO**



FILED USDC FLND TL
MAY 21 '26 PM 12:16

## I. PARTIES TO THIS COMPLAINT

### A. Plaintiff(s)

1. Plaintiff's Name: <u>Dustin Travis Beach</u>

   Address: <u>20053 Gulf Haven Dr.</u>

   City, State, and Zip Code: <u>Perry, FL 32348</u>

   Telephone: <u>850-843-5497</u> *(Cell)*

   Capacity: <u>Plaintiff Dustin Travis Beach brings this action in his individual capacity as a private citizen. Plaintiff currently serves as a State Committeeman for Taylor County, Florida. He brings this lawsuit personally and not on behalf of any political party, committee, or government office.</u>

2. Plaintiff's Name: <u>Shawna Marie Beach</u>

   Address: <u>20053 Gulf Haven Dr.</u>

   City, State, and Zip Code: <u>Perry, FL 32348</u>

   Telephone: <u>850-843-5284</u> *(Cell)*

   Capacity: <u>Plaintiff Shawna Marie Beach brings this action in her individual capacity as a private citizen. Plaintiff currently serves as the duly elected Property Appraiser for Taylor County, Florida, and State Committeewoman for Taylor County, Florida. She brings this lawsuit personally and not on behalf of the Taylor County Property Appraiser's Office, or any other governmental entity, political party, or committee.</u>

B.  Defendant(s)

Defendant's Name: <u>John Emmett Campbell</u>
<u>(commonly known as "Jack Campbell")</u>

Official Position: <u>State Attorney,</u>

Employed at: <u>Second Judicial Circuit of Florida</u>

Mailing Address: <u>301 South Monroe Street, Tallahassee, FL 32301</u>

☒ Sued in Individual Capacity          ☐ Sued in Official Capacity

## II.    BASIS FOR JURISDICTION

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution" and federal law.

Are you bringing suit against (check all that apply):

☐ Federal Officials (Bivens case)          ☒ State/Local    Officials    (§    1983    case)

## III.    STATEMENT OF FACTS

1. In 2022, Plaintiffs leased a two-hundred-acre parcel of land in Hamilton County, Florida for hunting. The property bordered land owned by the Suwannee River Water Management District (SRWMD). The shared boundary was unmarked, lacked the statutory "No Trespassing" signage or markings.

2. In late September 2022, Mrs. Beach killed an 8-point buck using a bow and reported the harvest through the official Florida Wildlife Commission (FWC) portal. Approximately one month after the harvest, an unidentified Florida Forest Service (FFS) forester allegedly reported a tree stand located near the boundary between the lease and SRWMD land. Despite multiple public records requests, neither FWC or FFS, has produced any documentation identifying this forester or the substance of the alleged report.

3. On October 26, 2022, Dustin received a call from Moultrie, the game camera company, informing him that FWC possessed his camera and provided Vazquez's contact information. Dustin called Vazquez expecting a discussion about a camera of Dustin's that was stolen. Instead, Vazquez accused Dustin of having a camera, corn, and tree stand on SRWMD land, which Dustin denied. According to a later complaint filed by Dustin, Vazquez stating, in substance, that "we can do this the easy way or the hard way. If you don't admit to it, then we'll do this the hard way. I will get warrants and seize your property. I can make this hard on you." Dustin ended the call. Verizon records confirm this call. This call was the means by which Dustin first obtained Vazquez's state-issued phone number.

**Factual Allegations, Continued** *(Page 2 of 9)*

4. On November 1, 2022, Vazquez obtained a signed search warrant for all data from the Moultrie cellular camera. At the time of the application, Vazquez own body camera footage captured his acknowledgment that the boundary was unmarked. Vazquez's warrant application described the location as an "illegal bait site" but did not disclose to the issuing judge that the SRWMD property was unposted and lacked boundary markings.

5. On March 3, 2023, Plaintiff Dustin Beach initiated a complaint with FWC against Officer Vazquez. Beach's complaint was routed to Officer Huff for handling. Huff called Dustin to discuss his complaints.

6. On March 6, 2023, Officer Huff emailed Major Scott Lee summarizing his contact with Plaintiff Dustin Beach regarding Beach's March 3, 2023 complaint against Officer Vazquez. Huff wrote: "I left Beach with an understanding that false accusations against FWC officers would not be tolerated," and classified the complaint as false and unfounded. Huff recommended no further action.

7. On March 9, 2023 the case was referred to State Attorney Jack Campbell via Governor's Executive Order 23-50.

8. On March 23, 2023, Defendant Campbell emailed defense counsel and expressly acknowledged that, upon consultation with the arresting officer, Plaintiffs "did everything legal, if they had not been on management land." Based on this recognition, Campbell consolidated all pending charges into a single count of

**Factual Allegations, Continued** *(Page 3 of 9)*

violating rules and extended a co-dependent Deferred Prosecution Agreement to all three defendants, conditioned upon a $100 administrative cost and a one-year forfeiture of hunting privileges. Campbell further excluded community service and any administrative action against Plaintiffs' licenses, acknowledging in writing that "this was clearly a hunting issue and the loss of one season should be punitive enough."

9. On April 17, 2023, Assistant Public Defender Bradley Holmes informed Campbell and defense counsel that Mr. Palmer was still evaluating the offer and requested a continuance. Campbell responded: "As I had previously said, I don't wanna waste a trip over there. If I come tomorrow, offer Is revoked for all three. Please let me know if the three of them wanna continuance, or if they want to set up for trial." No change in evidence, law, or circumstances of the case occurred between March, 23, 2023 and April 17, 2023.

10. On April 25, 2023 Defendant Campbell's office proposed that the SRWMD property boundary be posted as a condition of the agreement. Campbell stated "Would they rather fence or post the boundaries between the forest track and their property?" Campbell's statement confirms that, as of the time of DPA negotiations, the SRWMD property boundary had not been posted. On May 17, 2023 SRWMD declined to authorize Plaintiffs to mark the boundary lines.

11. On May 26, 2023, Officer Huff contacted Plaintiff Beach by telephone regarding a second complaint Beach had filed against Officer Vazquez. Huff emailed his Major

**Factual Allegations, Continued** *(Page 4 of 9)*

Scott Lee that same day summarizing the call and listing four statements attributed to Beach.

12. Between May 24, 2023 and June 1, 2023 , Plaintiff Dustin Beach reached out to FWC to file documentation regarding Vazquez behavior during their "easy way or the hard way" phone conversation. Beach also requested additional public records regarding FWC officers. Shortly thereafter, Campbell warned defense counsel that further OIG complaints would cause problems with the case.

13. On June 2, 2023, Defendant Campbell sent revised DPA terms to defense counsel Curtis. The revised terms included 15 hours of community service, monetary payment, surrendering of the deer antlers, and an admission of guilt.  None of these terms were part of Campbell's original March 23, 2023 offer. Regarding Curtis's proposed alternative language to the admission-of-guilt provision, Campbell refused, writing: "I don't want to alter it as suggested as it suggests their actual innocence."  On June 2, 2023, Curtis responded with proposed redlines and stated: "if they weren't knowingly committing a crime, anything above a civil penalty doesn't seem fair anyway." Campbell did not dispute this characterization in any subsequent communication. On June 14, 2023, the DPA was executed. The executed DPA terms — including community service, surrender of Mrs. Beach's antlers, and an admission of guilt — were not part of Campbell's original March 23, 2023 offer.

14. Over the following year, between approximately June 2023 and January 2024, Mr. Beach filed OIG complaints and pursued multiple public records requests seeking

**Factual Allegations, Continued** *(Page 5 of 9)*

information about Vazquez, Huff, and the FWC investigation. He also sent occasional text messages directed at Vazquez to Vazquez's work phone expressing frustration with perceived government misconduct.

15. On or around January 11, 2024, Officers Huff and Vazquez met with Third Circuit State Attorney John Durrett regarding the text messages Beach had sent up to that date. Durrett would later testify at trial that he told the officers the messages did not rise to the level of criminal charges.

16. On January 24, 2024 Beach filed a public records request for Officer Huff's disciplinary records. On April 18, 2024, Plaintiff Beach sent a copy of one of the disciplinary records to Huff's spouse via Facebook. Records sent were public records produced by FWC pursuant to Florida's public records law.

17. On April 26, 2024, Officer Vazquez filed Incident Summary Report ISR138556 with FWC, classifying the offense as "AC" and documenting text messages received from Beach. The report did not identify any instance in which Beach physically confronted, approached, or made direct physical contact with Vazquez.

18. On May 1, 2024, Officer Huff filed Incident Summary Report ISR051012. Huff's report was based on Beach's April 18, 2024 transmission of the OIG records to Huff's spouse. Huff's report characterized Beach's conduct as sending the records to her and 72 mutual friends.

19. Both Huff's and Vazquez's reports were filed within thirteen days of Beach's April 18, 2024 transmission of the publicly obtained OIG records to Huff's wife.

## Factual Allegations, Continued *(Page 6 of 9)*

20. On May 22, 2024, the case was referred to State Attorney Jack Campbell via Governor's Executive Order 24-100.

21. On May 23, 2024, Defendant Jack Campbell, filed information charging Plaintiff Dustin Beach with two third degree felonies: Retaliating Against a Witness and Corruption by Threats. Campbell requested the issuance of a capias for Beach's arrest. Campbell further requested that bail be set at $10,000 per count. The conditions of release including "NO USE OF INTERNET OR SOCIAL MEDIA", were printed on the capias as drafted by the State Attorney's office. No judicial officer reviewed, approved, or signed the conditions of release prior to their imposition. No hearing was held before these conditions took effect.

22. On May 23, 2024, officers arrived at Dustin's location to execute the arrest warrant for Dustin Beach. Among the officers present were Deputy U.S. Marshals. Shawna Beach, the Beach's 9 year old daughter and their newborn were also present at the time of the arrest. DHSMV records confirm that on May 23, 2024, Deputy U.S. Marshals accessed the Florida Driver And Vehicle Information Database (DAVID) for both Dustin Beach and Shawna Beach making twenty separate queries. In response to a public records inquiry regarding U.S. Marshals involvement in the prosecution of Dustin Beach, the Office of the State Attorney for the Second Judicial Circuit responded by email that "according to the Answers to Demand for Discovery there were no US Marshals involved in this case."

23. On May 23, 2024, defense counsel Ray Curtis filed a Notice of Appearance on

## Factual Allegations, Continued *(Page 7 of 9)*

behalf of Mr. Beach in the felony matter. Shortly after filing his Notice of Appearance, Curtis personally telephoned Defendant Campbell to discuss the conditions of the capias. Curtis inquired whether the "no use of internet or social media" provision had been included inadvertently, Defendant Campbell advised Curtis that the internet and social media restriction was not an accident. Campbell stated that there would be no deals made in this case, that he intended to take Mr. Beach to trial and convict him, and that, in Campbell's words, if he got his way, Mr. Beach "would not have to worry about hunting anymore because he would not be legally able to possess a firearm.".

24. The internet and social media ban remained in effect for approximately nineteen (19) days. During that period, Beach was barred from all internet access. As a result of the ban, Beach was unable to: perform routine parental functions including ordering formula for their newborn; access online financial services; access online healthcare services; participate in online political activity at a time his wife was seeking re-election; communicate with replacement counsel by email, access court docket information, review electronically transmitted discovery materials, or research potential defense attorneys in his own pending felony case — during the same period in which Defendant Campbell declared his intent to call that attorney as a State witness; operate internet-connected security systems, including viewing property security cameras, measures that protected his family.

25. During the same telephone conversation listed in ¶23, Defendant Campbell further

**Factual Allegations, Continued** *(Page 8 of 9)*

advised Curtis that he intended to list Curtis as a witness for the State. Following that conversation, Curtis advised Mr. Beach that Curtis might need to withdraw from representing him.

26. On June 11, 2024, Beach appeared for a motion to modify condition of release. Video from the zoom meeting shows Campbell actively petitioned to extend the internet ban stating "we ask that he (Beach) be completely cleaved from the internet and social media until the case is over". Mr. Campbell also stated "Mr. Curtis told him (Beach) not to continue to harass the officers involved in the previous case". Curtis then informed Judge Douglas that "the presentation that he (Campbell) has presented lacks context and is factually inaccurate. At his (Campbell's) request, during the prior case, he (Campbell) asked me to speak with Beach about not filing OIG complaints because that was irritating the officers and we were trying to get a DPA done". Judge Douglas denied Campbell's request and lifted the restriction.

27. On July 23, 2024, Defendant Campbell stated in his Amended Notice of Similar Fact Evidence, that the two cases are "inextricably intertwined".

28. During pretrial argument on December 2, 2024, Campbell made a proffer to the court in which he represented that Vazquez "pulled the camera, got a search warrant" and "had no idea who was on that camera until it came back from technology." Defense counsel Curtis immediately corrected Campbell on the record, listing the events listed in ¶3.

29. During Vazquez's direct examination at trial, Campbell asked Vazquez: "Did you

## Factual Allegations, Continued *(Page 9 of 9)*

know him prior to this?" Vazquez answered: "At the time, no." As Vazquez began to continue speaking, courtroom video shows Campbell repeatedly raising his hand toward the witness in a stop gesture. Campbell then immediately cut off Vazquez's response, stating, "That's all I've got for you," and terminated questioning on that subject.

30. Also, during trial on December 2, 2024, Shawna Beach testified under oath that she did not freely and voluntarily enter into the deferred prosecution agreement in Case 1. When asked by Campbell whether she entered the DPA freely and voluntarily, Shawna Beach testified: "I would say no". On cross-examination, when asked whether she "felt there was pressure applied due to ... State Attorney Campbell to enter into the DPA," Shawna Beach answered "yes".

31. After the State rested its case, defense counsel moved for a judgment of acquittal on Count 1. Counsel argued that the State failed to prove the required statutory elements. On Count 2, Defense counsel informed the court that the statute creating that offense had been repealed in 1974 and had not existed for approximately fifty years at the time of charging.

32. The two original felony charges — Witness Retaliation and Corruption by Threat Against a Public Servant — were dropped. Dustin Beach entered a plea of nolo contendere to two counts of Resisting Without Violence, both first-degree misdemeanors. Adjudication was withheld on both counts. Neither original felony charge resulted in a conviction.

## IV.    STATEMENT OF CLAIMS

### COUNT I - First Amendment Retaliation Under 42 U.S.C § 1983

*(Plaintiff Dustin Beach against Defendant Campbell)*

Plaintiff Dustin Beach incorporates by reference paragraphs 8, 11-14, 21-27, 30-32 as relevant to this Count.

### COUNT II - Fourth Amendment Malicious Prosecution Under 42 U.S.C § 1983

*(Plaintiff Dustin Beach against Defendant Campbell)*

Plaintiff Dustin Beach incorporates by reference paragraphs 8-10, 12, 13, 21-32 as relevant to this Count.

### COUNT III – Fourth Amendment Unreasonable Seizure – Internet Ban Under 42 U.S.C § 1983

*(Plaintiff Dustin Beach against Defendant Campbell)*

Plaintiff Dustin Beach incorporates by reference paragraphs 21-24, 26, 31, 32 as relevant to this Count.

## COUNT IV – First Amendment Prior Restraint – Internet Ban Under 42 U.S.C § 1983

*(Plaintiff Dustin Beach against Defendant Campbell)*

Plaintiff Dustin Beach incorporates by reference paragraphs 21-24, 26, 31, 32 as relevant to this Count.

## COUNT V – First Amendment Retaliation – Shawna Beach's Independent Claim Under 42 U.S.C § 1983

*(Plaintiff Shawna Beach against Defendant Campbell)*

Plaintiff Shawna Beach incorporates by reference paragraphs 8, 11-14, 21-27, 30-32 as relevant to this Count.

## COUNT VI – Fourteenth Amendment Fabrication of Evidence Under 42 U.S.C § 1983

*(Plaintiff Dustin Beach against Defendant Campbell)*

Plaintiff Dustin Beach incorporates by reference paragraphs 8, 21, 26, 28, 29, 31, 32 as relevant to this Count.

## V.    RELIEF REQUESTED

MONETARY DAMAGES

A. Compensatory damages against the Defendant in an amount to be determined at trial, including but not limited to:

(i) Economic damages, including but not limited to lost business income of approximately $150,000; legal fees and costs incurred in defense of the retaliatory prosecutions; costs associated with the seizure and wrongful retention of personal property;

(ii) Non-economic damages for emotional pain and suffering, mental anguish, humiliation, loss of reputation, damage to personal and professional relationships, depression, anxiety, and loss of enjoyment of life suffered by both Plaintiffs;

(iii) Damages for the specific constitutional injuries suffered, including the chilling effect on Plaintiffs' First Amendment rights, the stigma and deprivation associated with felony arrest and the deprivation of liberty caused by the nineteen-day total internet ban;

 B. Punitive damages against Defendant Campbell, individually,

 C. Nominal damages for each constitutional violation proven at trial, to the extent compensatory damages cannot be precisely quantified for any individual claim;

ATTORNEY'S FEES AND COSTS

D. Reasonable attorney's fees and litigation expenses if Plaintiffs retain counsel at any stage of this action; while proceeding pro se, Plaintiffs do not seek attorney's fees.

E. Taxable costs of suit; witness attendance, mileage, and subsistence fees; expert witness fees; compensation for any court-appointed expert; and costs, expenses, and fees recoverable as sanctions for any vexatious, dilatory, or bad-faith conduct in this litigation.

ADDITIONAL AND GENERAL RELIEF

F. Pre-judgment and post-judgment interest on all monetary awards at the maximum rate allowed by law;

G. Such other and further relief as this Court deems just, proper, and equitable.

## VI.    CERTIFICATION

As required by Federal Rule of Civil Procedure 11, I certify by signing below that to the best of my knowledge, information, and belief, this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to timely notify the Clerk's Office if there is any change to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date: May 21, 2026    Plaintiff's Signature: _Dustin Beach_

Printed Name of Plaintiff: Dustin Beach

Address: 20053 Gulf Haven Dr. Perry, FL 32348

E-Mail Address: DustinTBeach@gmail.com

Telephone Number: 850-843-5497

Date: May 21, 2026      Plaintiff's Signature: _____

Printed Name of Plaintiff: <u>Shawna Beach</u>

Address: <u>20053 Gulf Haven Dr. Perry, FL 32348</u>

E-Mail Address: <u>ShawnaBeach@gmail.com</u>

Telephone Number: <u>850-843-5284</u>